**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LONG HORIZON TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>SIEMENS AKTIENGESELLSCHAFT and SIEMENS INDUSTRY, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:26-cv-00<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Long Horizon Technologies LLC ("Long Horizon" or "Plaintiff") for its Complaint against Defendants Siemens Aktiengesellschaft ("Siemens AG") and Siemens Industry, Inc. ("Siemens Industry") (collectively, "Siemens" or "Defendants"), for patent infringement alleges as follows:

## THE PARTIES

1. Long Horizon is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Marshall, TX 75670.

2. On information and belief, Siemens AG is a corporation organized and existing under the laws of German, with a principal place of business located at Werner-von-Siemens-Straße 1, 80333 München, Germany. On information and belief, Siemens AG does business in the Eastern District of Texas, either directly or through intermediaries under its control.

3. On information and belief, Siemens Industry is a corporation organized and existing under of the State of Delaware, with a regular and established place of business in this District

located at 5800 Granite Parkway, Suite 600, Plano, Texas, 75024. Siemens Industry may be served with process through its registered agent, CT Corporation System at 1999 Bryan Street, Suite 900 Dallas, Texas 75201. On information and belief, Siemens Industry does business in the Eastern District of Texas, either directly or through intermediaries under its control.

## JURISDICTION

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendants because Defendants do continuous and systematic business in this District, including by providing infringing products and services to the residents of the Eastern District of Texas that Defendants knew would be used within this District, and by soliciting business from the residents of the Eastern District of Texas. For example, Defendant is subject to personal jurisdiction in this Court because, *inter alia*, Defendants have distribution partners in this District and directly and through agents regularly does, solicits, and transacts business in the Eastern District of Texas.

6. In particular, Defendants have committed and continue to commit acts of infringement in violation of 35 U.S.C. § 271, and have made, used, marketed, distributed, offered for sale, sold, and/or imported infringing products in the State of Texas, and engaged in infringing conduct within and directed at or from this District. For example, Defendants have purposefully and voluntarily placed the Accused Products into the stream of commerce with the expectation that the Accused Products will be used in this District. The Accused Products have been and continue to be distributed to and used in this District. Defendants' acts cause and have caused injury to UAS, including within this District.

7. In addition, or in the alternative, this Court has personal jurisdiction over Siemens AG pursuant to Fed. R. Civ. P. 4(k)(2).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1400, at least as to Siemens Industry, because it has a regular and established place of business at 5800 Granite Parkway, Plano, Texas 75024, and has committed acts of infringement in this District.

9. Venue is proper in this District as to Siemens AG pursuant to 28 U.S.C. § 1391. Schneider SE is not a resident of the United States and thus "may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

## PATENTS-IN-SUIT

10. On August 4, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,733,021 (the "'021 Patent") entitled "System of Cloud Computing and Method for Detaching Load in Cloud Computing System." A true and correct copy of the '021 Patent is attached hereto as Exhibit A.

11. On May 5, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,738,894 (the "'894 Patent") entitled "Methods for Firmware Signature." A true and correct copy of the '894 Patent is attached hereto as Exhibit B.

12. On September 18, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,271,962 (the "'962 Patent") entitled "Scripted Interactive Screen Media." A true and correct copy of the '962 Patent is attached hereto as Exhibit C.

13. Long Horizon is the sole and exclusive owner of all right, title, and interest in the '021 Patent, the '894 Patent, and the '962 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Long Horizon also has the

right to recover all damages for past, present, and future infringement of the Patent-in-Suit and to seek injunctive relief as appropriate under the law.

14. Long Horizon has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

15. The ’021 Patent generally relates to systems and methods for distributing cloud-computing workloads. The technology described in the ’021 Patent was developed by Eui Nam Huh, Yunkon Kim, Jun Young Byun. By way of example, this technology is implemented core, regional, and edge clouds to reduce network load and improve the speed and efficiency of providing cloud services to client devices.

16. The ’894 Patent generally relates to methods for installing embedded firmware. The technology described in the ’894 Patent was developed by inventors Brian A. Batke, Jack M. Visoky, James J. Kay, Scott A. Mintz, and William B. Cook. By way of example, this technology is implemented methods that associate one or more digital certificate instances with one or more firmware file instances to update or facilitate the update of signature-unaware modules with signature-aware firmware.

17. The ’962 Patent generally relates to systems and methods for scripting and controlling interactive computer simulations. The technology described in the ’962 Patent was developed by Brian Muller. By way of example, this technology is implemented in software platforms that allow users to create and edit textual commands that control simulated objects, execute those commands during a time-based three-dimensional simulation, update the states of simulated equipment, and graphically display the resulting simulated operations.

18. Siemens has infringed and continues to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products that infringe the Patents-in-Suit.

**COUNT I**
**(Infringement of the ’021 Patent)**

19. Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

20. Long Horizon has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’021 Patent.

21. Defendants have and continue to directly infringe the ’021 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’021 Patent. Such products include, but are not limited to, Siemens Industrial Edge Platform; Industrial Edge Hub; Industrial Edge Management Cloud; Industrial Edge Management Pro; Industrial Edge Management Virtual; Industrial Edge Runtime; Industrial Edge Virtual Device; Industrial Edge Cloud Device; Industrial Edge Own Device; SIMATIC IPC227G Industrial Edge; SIMATIC IPC847E Industrial Edge; SIMATIC IOT2050 Industrial Edge; SIMATIC IPC BX-21A Industrial Edge; SIMATIC IPC BX-39A Industrial Edge; SIMATIC IPC BX-59A Industrial Edge; SCALANCE LPE9413 and LPE9433 Industrial Edge Devices; SIMATIC Automation Workstation when operated as an Industrial Edge Device; SIMATIC HMI MTP700, MTP1000, MTP1200, MTP1500, MTP1900 and MTP2200 Unified Comfort Panels and their neutral, hygienic and SIPLUS variants when operated with integrated Industrial Edge; SIMATIC WinCC Unified for Industrial Edge; Industrial Information Hub and Industrial Information Hub Essentials; SIMATIC S7 Connector; SIMATIC S7+ Connector; OPC UA Connector; Cloud Connector; Flow Creator; External Databus; DataXess;

Common Configurator; Drive Connector SINAMICS; Drivetrain Analyzer Edge; Performance Insight/OEE Analytics; and other Siemens Industrial Edge applications that are centrally distributed or managed and executed on a local Industrial Edge Device, among other Siemens products.

22. For example, Defendants have and continue to directly infringe at least claim 10 of the ’021 Patent by making, using, offering to sell, selling, and/or importing into the United States Siemens Industrial Edge. The Siemens Industrial Edge is exemplary of how the other Siemens products accused herein to infringe the ’021 Patent.

23. For example, the Siemens Industrial Edge performs a method of detaching load in a cloud computing system comprising a cloud server configured to provide a cloud service and a client terminal configured to request or be provided with the service, the cloud server and the client terminal connected over a particular network (e.g., Siemens Industrial Edge, including central Industrial Edge Management infrastructure, Industrial Edge Devices, Edge Apps, and connected industrial and/or user client devices communicating over one or more networks).

24. The Siemens Industrial Edge performs step no. 1 of arranging an edge cloud on a network node connected to the client terminal, the edge cloud formed with a particular cloud server (e.g., deploying an Industrial Edge Device running Industrial Edge Runtime at or near connected industrial equipment and client devices).

25. The Siemens Industrial Edge performs step no. 2 of determining whether or not identification is possible for a cloud service request signal transmitted from a publisher client terminal among the client terminals at the edge cloud (e.g., Industrial Edge authentication, reverse-proxy, and user-management functionality identifying and/or authenticating a requesting client, user, and/or session).

26. The Siemens Industrial Edge performs step no. 3-1 of providing a cloud service corresponding to the request signal to a subscriber client terminal wishing to receive the cloud service if the cloud service corresponding to the request signal is being operated at a cloud server of the edge cloud, if it is determined in said step no. 2 that identification is possible for the request signal (e.g., upon successful identification and/or authentication, routing the request to and providing the requested service from an Edge App executing locally on the Industrial Edge Device).

27. The Siemens Industrial Edge performs step no. 3-2 of transmitting the request signal to a core cloud connected to a cloud server and formed with a particular cloud server, if it is not determined in said step no. 2 that identification is possible for the request signal or if the cloud service corresponding to the request signal is not being operated at the cloud server of the edge cloud (e.g., forwarding and/or transmitting requests or associated service data from the Industrial Edge Device to Industrial Edge Management, cloud infrastructure, and/or another higher-level computing service when the requested service cannot be provided locally).

28. The Siemens Industrial Edge performs step no. 4-1 of, determining whether the edge cloud that has transmitted the request signal is connected to the subscriber client terminal (e.g., determining and/or maintaining whether the Industrial Edge Device has an active network, application, user, and/or session connection with the subscriber client terminal), and transmitting a backward packet to the edge cloud that has transmitted the request signal based on the determining whether the edge cloud that has transmitted the request signal is connected to the subscriber client terminal (e.g., transmitting responsive service and/or network packets to the Industrial Edge Device based on the requesting client's connection and/or session state).

29. The Siemens Industrial Edge performs step no. 4-2 of identifying the request signal

and providing the cloud service corresponding thereto to the subscriber client terminal (e.g., identifying and processing the forwarded request at the higher-level Industrial Edge and/or cloud infrastructure and providing the corresponding service or responsive information to the requesting subscriber client).

30. Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Siemens has used the Accused Products in a manner that directly infringes at least the method claims of the ’021 Patent.

31. Defendants have and continue to indirectly infringe one or more claims of the ’021 Patent by knowingly and intentionally inducing others, including Siemens customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

32. Defendants, with knowledge that these products, or the use thereof, infringe the ’021 Patent at least as of the date of this Complaint, have knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the ’021 Patent by providing these products to others for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their employees and agents not to review the patents of other, including specifically those related to Defendants’ specific industry, thereby remaining willfully blind to the ’021 Patent at least as early as the issuance of the ’021 Patent.

33. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the ’021 Patent, but while remaining willfully

blind to the infringement. Defendants have and continue to induce infringement by their customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications, including the documents cited herein.

34. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '021 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '021 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '021 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be specially made or adapted for use in the infringement of the '021 Patent. Defendants perform these affirmative acts with knowledge of the '021 Patent and with intent, or willful blindness, that they cause the direct infringement of the '021 Patent.

35. Long Horizon has suffered damages as a result of Defendants' direct and indirect infringement of the '021 Patent in an amount to be proven at trial.

36. Long Horizon has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '021 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT II
**(Infringement of the '894 Patent)**

37. Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

38. Long Horizon has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’894 Patent.

39. Defendants have and continue to directly infringe the ’894 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’894 Patent. Such products include, but are not limited to, Siemens PowerLink systems, SIPROTEC protection and automation products, SICAM grid and power-automation products, RUGGEDCOM industrial networking products, SIMATIC programmable controllers, distributed automation systems, operator panels and industrial computers, SCALANCE networking products, SINAMICS drive products, Siemens Industrial Edge Devices, and other Siemens industrial products that implement firmware-update and secure firmware-installation functionality, among other Siemens products.

40. For example, Defendants have and continue to directly infringe at least claim 1 of the ’894 Patent by making, using, offering to sell, selling, and/or importing into the United States PowerLink CM. The PowerLink CM is exemplary of how the other Siemens products accused herein infringe the ’894 Patent.

41. For example, the PowerLink CM performs a method that receives, by a first device, signature unaware firmware code (e.g., a PowerLink CM device receiving pre-version-04.12 unsigned DMB firmware in .tar and/or .bin format); installing, by the first device via boot code, the signature unaware firmware code on the first device (e.g., PowerLink CM boot and firmware-update functionality, including DmbComConBoot and associated update functionality, installing the unsigned .tar and/or .bin DMB firmware on the PowerLink CM device), wherein the boot code

is configured for installation of a signature aware firmware code and the signature unaware firmware code to the first device (e.g., PowerLink CM boot and firmware-update functionality supporting installation of both unsigned .tar/.bin DMB firmware and digitally signed .cms DMB firmware), wherein the installing the signature unaware firmware code further comprises verifying, via at least one feedback mechanism, that the signature unaware firmware code is received from a second device associated with a user that has physical access to the first device (e.g., PowerLink CM service-interface and firmware-update functionality verifying that the unsigned firmware is received from a locally connected programming or service computer associated with a user having physical access to the PowerLink CM device).

42. Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Siemens has used the Accused Products in a manner that directly infringes at least the method claims of the ’894 Patent.

43. Defendants have and continue to indirectly infringe one or more claims of the ’894 Patent by knowingly and intentionally inducing others, including Fortinet customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

44. Defendants, with knowledge that these products, or the use thereof, infringe the ’894 Patent at least as of the date of this Complaint, have knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the ’894 Patent by providing these products to others for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their employees and agents not to review the patents of other, including specifically those related

to Defendants' specific industry, thereby remaining willfully blind to the '894 Patent at least as early as the issuance of the '894 Patent.

45. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '894 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications, including the documents cited herein.

46. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '894 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '894 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '894 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be specially made or adapted for use in the infringement of the '894 Patent. Defendants perform these affirmative acts with knowledge of the '894 Patent and with intent, or willful blindness, that they cause the direct infringement of the '894 Patent.

47. Long Horizon has suffered damages as a result of Defendants' direct and indirect

infringement of the ’894 Patent in an amount to be proven at trial.

48. Long Horizon has suffered, and will continue to suffer, irreparable harm as a result of Defendants’ infringement of the ’894 Patent, for which there is no adequate remedy at law, unless Defendants’ infringement is enjoined by this Court.

**COUNT III**
**(Infringement of the ’962 Patent)**

49. Paragraphs 1 through 18 are incorporated by reference as if fully set forth herein.

50. Long Horizon has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’962 Patent.

51. Defendants have and continue to directly infringe the ’962 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’962 Patent. Such products include, but are not limited to, Siemens Tecnomatix Process Simulate X Standard; Process Simulate X Advanced; Process Simulate X Robotics Standard; Process Simulate X Robotics Advanced; Tecnomatix Process Simulate Robotics; Process Simulate on Teamcenter in connected and standalone configurations; Process Simulate standalone/eMServer configurations; and associated robotic-programming and offline-programming functionality, including the Robot Program Viewer, OLP Editor, Path Editor, Offline Programming functionality, OLP Controllers, Simulation Monitor, robotic path programming, robot-program editing, and robotic simulation, among other Siemens products.

52. For example, Defendants have and continue to directly infringe at least claim 1 of the ’962 Patent by making, using, offering to sell, selling, and/or importing into the United States the Siemens Tecnomatix Process Simulate. The Siemens Tecnomatix Process Simulate is

exemplary of how the other Siemens products accused herein to infringe the '962 Patent.

53. For example, the Siemens Tecnomatix Process Simulate performs a method comprising: receiving input from a text editor containing lines of text of a script (e.g., receiving robot-program instructions and OLP commands entered, pasted, and/or edited as textual program lines in the Robot Program Viewer and/or OLP Editor).

54. The Siemens Tecnomatix Process Simulate performs the step of identifying commands to control objects in a simulation in the lines of text in the editor (e.g., recognizing motion, OLP, signal, wait, tool, location, and/or other robot-program commands that control simulated robots and manufacturing resources).

55. The Siemens Tecnomatix Process Simulate performs the step of receiving an indication that the input changed a command in a particular line of text (e.g., receiving an edit, addition, deletion, replacement, comment/uncomment operation, and/or other modification of an OLP or motion command in a selected robot-program line).

56. The Siemens Tecnomatix Process Simulate performs the step of identifying an object in the simulation affected by the changed command (e.g., identifying the robot, robotic path, tool, workpiece, positioner, conveyor, and/or other simulated resource associated with the edited program instruction).

57. The Siemens Tecnomatix Process Simulate performs the step of applying the changed command to the identified object to update a state of the object at an increment of time in the simulation associated with the line containing the changed command (e.g., executing the edited robot-program instruction at its corresponding point in the simulated robot-program cycle to update the motion, position, tool, signal, interaction, and/or operating state of the associated simulated robot or resource).

58. The Siemens Tecnomatix Process Simulate performs the step of displaying the simulation in a graphical display (e.g., rendering and displaying the resulting robot and manufacturing-cell behavior in Process Simulate's dynamic 3D environment).

59. Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Siemens has used the Accused Products in a manner that directly infringes at least the method claims of the '962 Patent.

60. Defendants have and continue to indirectly infringe one or more claims of the '962 Patent by knowingly and intentionally inducing others, including Siemens customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

61. Defendants, with knowledge that these products, or the use thereof, infringe the '962 Patent at least as of the date of this Complaint, have knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '962 Patent by providing these products to others for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their employees and agents not to review the patents of other, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '962 Patent at least as early as the issuance of the '962 Patent.

62. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '962 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers,

partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications, including the documents cited herein.

63. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '962 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '962 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '962 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be specially made or adapted for use in the infringement of the '962 Patent. Defendants perform these affirmative acts with knowledge of the '962 Patent and with intent, or willful blindness, that they cause the direct infringement of the '962 Patent.

64. Long Horizon has suffered damages as a result of Defendants' direct and indirect infringement of the '962 Patent in an amount to be proven at trial.

65. Long Horizon has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '962 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Long Horizon prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c. An order awarding damages sufficient to compensate Long Horizon for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d. Entry of judgment declaring that this case is exceptional and awarding Long Horizon its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e. Such other and further relief as the Court deems just and proper.

Dated: October 29, 2026

Respectfully submitted,

*/s/ John Andrew Rubino*

John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
1200 Harbor Blvd., 10th Floor
Weehawken Township, NJ 07086
Telephone: (201) 341-9445
Facsimile: (973) 535-0921

Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Road, Suite 206 South

Rye, NY 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF,***
***LONG HORIZON TECHNOLOGIES LLC***